United States District Court
Southern District of Texas

**ENTERED**
March 22, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Clean Energy, § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. H-19-244 |
| § | |
| Trillium Transportation Fuels § | |
| LLC, Trillium USA Company LLC, § | |
| Defendants. § | |

# Memorandum and Recommendation

Plaintiff Clean Energy sued Defendants Trillium Transportation Fuels LLC and Trillium USA Company LLC under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, and the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. Defendants filed a motion to dismiss and, in the alternative, for a more definite statement. (D.E. 18.) Clean Energy filed a response. (D.E. 25.) This motion was referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(A). The court recommends that the motion be denied.

1. Facts

Clean Energy alleges that its two former employees, Charles Love and Ryan Forrest, obtained Clean Energy's trade secrets and left the company to join Trillium, a direct competitor. (Compl. ¶¶ 13, 19, 23–25, 28–36.) Love allegedly plotted with Trillium's President, Bill Cashmarek, to take business from Clean Energy. (Compl. ¶¶ 3, 23–27.)

The Complaint alleges that Love, along with Cashmarek, approached Forrest and offered him to join Trillium as a senior business development manager. (Compl. ¶¶ 32–36.) According to Clean Energy, Love called Forrest multiple times and Forrest met

with Trillium's "executive team" around the time Forrest started to email himself confidential data from Clean Energy's computers—"a practice he had rarely, if ever, done before." (Compl. ¶¶ 3, 32–34, 37.) Allegedly, "just one day before" Forrest resigned to accept the position at Trillium, he downloaded hundreds of confidential electronic documents from Clean Energy's computer and database into to his personal USB. (Compl. ¶¶ 4, 39–40.) The documents included Clean Energy's "customer relationship management database" and "opportunity pipeline of current and ongoing deals." (Compl. ¶ 35.)

The Complaint further alleges that Love, Forrest, and Trillium used the trade secrets to compete with Clean Energy. (Compl. ¶¶ 27, 49–54.)

2. Standard of Review

A plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," and "drawing all reasonable inferences in that party's favor." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A complaint only needs to give the defendant fair notice of the claim and the grounds it relies on. *Twombly*, 550 U.S. at 555. A 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (internal quotation marks omitted). The pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014); *see also Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory.").

3. Analysis
   A. Computer Fraud and Abuse Act (CFAA) claim

The CFAA provides a private cause of action in 18 U.S.C. § 1030(g). A civil plaintiff can state a cause of action under the CFAA for a violation of any subsection of § 1030 that results in damages involving one of the factors listed in § 1030(a)(5)(B)(i)–(v). *Fiber Sys. Intern., Inc. v. Roehrs*, 470 F.3d 1150, 1157 (5th Cir. 2006). For example, Plaintiff can state a CFAA claim by alleging that Defendants (1) "intentionally accesse[d] a protected computer without authorization or [by] exceed[ing] authorized access," and (2) obtained "information from any protected computer." *See* 18 U.S.C. § 1030(a)(2); *Roehrs*, 470 F.3d at 1157.

Trillium argues that Clean Energy's complaint lacks the allegation that Forrest exceeded his authority when he accessed Clean Energy's computers because he had authorized access as a Clean Energy employee.

Under the CFAA, "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). "Access to a computer and data that can be obtained from that access may be

3

exceeded if the purposes for which access has been given are exceeded." *United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010).

Courts have held that an employee's authority to access the employer's protected computers is terminated when the employee breaches the duty of loyalty to the employer. *See Int'l Airport Ctrs. LLC v. Citrin*, 440 F.3d 418, 420–21 (7th Cir. 2006); *United States v. Phillips*, 477 F.3d 215, 221 n.5 (5th Cir. 2007) (citing, with approval, *Int'l Airport Ctrs*); *cf. T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App. 1998) (in Texas, formation of an employment relationship creates a duty not to "us[e] confidential or proprietary information acquired during the relationship in a manner adverse to the employer"). An employee who accesses her employer's protected data exceeds her authorized access when she acts with the intent to benefit her next employer. *See, e.g., Beta Tech., Inc. v. Meyers*, CIV.A. H-13-1282, 2013 WL 5602930, at *3 (S.D. Tex. Oct. 10, 2013).

Here, the Complaint alleges that Forrest, while still employed with Clean Energy, extracted confidential data from Clean Energy's protected computers to benefit Trillium, Forrest's next employer. (Compl. ¶¶ 32–42.) Taking the allegations as true, Forrest breached a duty he owed to Clean Energy, and thereby exceeded his authority in accessing Clean Energy's protected computers. In addition, the Complaint alleges that the confidentiality agreement between Clean Energy and its employees prohibited Forrest from disclosing any company information he acquired as an employee. (Compl. ¶ 31.) These allegations satisfy the pleading standards as to the claim that Forrest exceeded his authorized access.

Next, Trillium asserts that the Complaint lacks an allegation that Trillium accessed Clean Energy's computers. Under the CFAA, a plaintiff can hold a defendant-employer liable for its employee's conduct made "[w]hile still employed by the plaintiff, but acting as an agent for the defendant." *See, e.g., Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1123 (W.D. Wash. 2000).

The Complaint alleges that Forrest, while employed at Clean Energy, met with Love and Cashmarek, who together pushed Forrest to join Trillium. (Compl. ¶¶ 32–34.) It also alleges that Forrest had multiple phone conversations with Love after Love joined Trillium. (Compl. ¶¶ 32, 34.) According to the Complaint, the period that Forrest allegedly started emailing himself confidential data overlapped with the period that he met with Love, Cashmarek, and Trillium's "executive team." (Compl. ¶¶ 32–41.) Clean Energy further alleges that Trillium intentionally acquired and used the data to bid against Clean Energy on competing projects. (Compl. ¶¶ 49–54, 61.) It can be reasonably inferred from these allegations that Forrest acted as Trillium's agent in accessing Clean Energy's computers.

Therefore, Clean Energy's Complaint alleges sufficient facts to state a plausible CFAA claim against Trillium.

B. Defend Trade Secrets Act (DTSA) claim

To state a claim under the DTSA, a plaintiff must allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. 18 U.S.C. § 1836; *Blue Star Press, LLC v. Blasko*, No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835, at *2 (W.D. Tex. Mar. 6, 2018). The DTSA's definition of "misappropriation" includes acquisition or use of trade secrets with the knowledge that they were acquired by improper means. *See* 18 U.S.C. § 1839(5). The definition of "improper means" includes "breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A).

Trillium argues that Clean Energy did not state a DTSA claim against Trillium but only against Love and Forrest. However, an employee's next employer can be held liable under the DTSA for using the competitor-plaintiff's trade secrets that the employee took, while still employed with the competitor, as an agent of the next employer. *See, e.g., Blue Star Press, LLC*, 2018 WL 1904835, at *2–3 (the plaintiff stated a plausible DTSA claim against the competitor-defendant where the plaintiff alleged that (1) its former employee acted as the defendant's agent in taking the plaintiff's trade secrets while still employed with the plaintiff and (2) the defendant later

5

incorporated the trade secrets into its business); *TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-CV-58-RP, 2019 WL 369152, at *2 (W.D. Tex. Jan. 30, 2019) (granting injunctive relief under the DTSA against the defendant-competitor who allegedly hired employees that "defected" from the plaintiff-company with its trade secrets).

The Complaint alleges that Trillium used Clean Energy's trade secrets, obtained by Forrest, to solicit business from Clean Energy's customers. (Compl. ¶¶ 49–54.) Therefore, the Complaint satisfies the 12(b)(6) pleading standard as to the "use" element of its DTSA claim.

According to the Complaint, soon after Trillium started "pushing" Forrest to leave Clean Energy, Forrest accessed and emailed himself Clean Energy's protected documents. (Compl. ¶¶ 3–4, 31–42, 61.) Allegedly, Forrest extracted the data while he was still employed with Clean Energy and owed a duty to maintain the secrecy of the data. (Compl. ¶¶ 31–42.) Read in the light most favorable to Clean Energy, the Complaint satisfies the 12(b)(6) pleading standard as to the "knowledge" and "improper means" elements of "misappropriation," as defined under the DTSA.

Finally, Clean Energy alleges that the misappropriated documents are its trade secrets. (Compl. ¶¶ 37–41, 49, 52–54.)

Therefore, Clean Energy alleges sufficient facts to state a plausible DTSA claim against Trillium.

4. Conclusion

The court recommends denying Defendants' Rule 12(b)(6) motion to dismiss and Rule 12(e) motion for a more definite statement. Clean Energy alleges sufficient facts to state plausible claims under the CFAA and DTSA and gives Defendants sufficient notice of the claims and their grounds.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140,

147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

    Signed at Houston, Texas on March 22, 2019.

_____
Peter Bray
United States Magistrate Judge